**CITY OF SEABROOK,**
Texas, Appellant,

v.

**PORT OF HOUSTON AUTHORITY,**
Appellee.

No. 01–04–00925–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 18, 2006.

Mark E. Goldstucker, Robert F. Brown, Brown & Hofmeister, L.L.P., Richardson, TX, for Appellant.

W. Allyn Hoaglund, Hoaglund Law Firm, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## EN BANC OPINION

JANE BLAND, Justice.

In this condemnation action between two corporate landowners and the Port of Houston Authority, the City of Seabrook appeals the trial court's interlocutory order denying its plea to the jurisdiction, a plea it asserted upon intervening in the suit.[1] We hold that the issue raised in the City's jurisdictional plea does not implicate the trial court's subject-matter jurisdiction. The trial court therefore properly denied the plea, and we dismiss the City's appeal for lack of jurisdiction.

### Background

The Port of Houston Authority is a political subdivision and a navigation district. The Legislature created the Port in 1927

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2005).

under the authority of article III, section 52 of the Texas Constitution. *See* TEX. CONST. art. III, § 52; Act of 1927, 40th Leg., R.S., ch. 97, § 1, 1927 Tex. Gen. Laws 256, 256–57, *amended by* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247. In 1957, the Legislature converted the Port into a navigation district under article XVI, section 59 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59; Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247, *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 1042, § 1, 1987 Tex. Gen. Laws 3506, 3506–07. Generally, upon its conversion to a navigation district, the Port retained all powers conferred upon it under article III, section 52. *See* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247 (providing that Port would operate under article XVI, section 59 while also retaining "all powers conferred upon said District by the law or laws under which it was organized").

In June 2002, the Port sued two private landowners, American Acryl NA, L.L.C. and American Acryl L.P. (together, "American"), neither of which are parties to this appeal. The Port seeks to condemn about forty-nine acres of property owned by American, and to acquire fee simple title—excluding the mineral estate and a drainage easement to be reserved to American. *See* TEX. PROP.CODE ANN. § 21.012(a) (Vernon 2004) (providing for political subdivision and other governmental entities seeking to acquire real property for public use to instigate condemnation proceeding). The Port seeks to condemn the property in connection with its development of a voter-approved significant expansion to the Port, commonly known as the Bayport Terminal Project. The American property lies entirely within the limits

of the City of Seabrook. According to the record, this is not the only lawsuit arising from the proposed expansion, nor is this the only parcel of commercial property that the Port seeks to condemn (or already has condemned).

Pursuant to statute, the trial court appointed special commissioners, who appraised the damages for the property's taking at $627,397.00. *See id.* § 21.014(a) (Vernon 2004) (providing for appointment of special commissioners to assess damages owed to property owner for property's condemnation). In August 2002, the special commissioners filed their award with the trial court. *See id.* American objected to the special commissioners' award, asserting, among other things, that the Port "lack[ed] the power to condemn" its property because it had failed to obtain the City's consent. *See id.* § 21.018(a) (Vernon 2004) (providing that party to condemnation proceeding may object to special commissioners' award by filing objections and grounds in court having jurisdiction).

The City then intervened in this lawsuit in February 2003. The City alleged that (1) it had standing to intervene based on an applicable Water Code provision that requires the City's consent to right-of-way condemnations within its boundaries; and (2) it had not given its consent to the condemnation. The City further requested that the trial court declare that the Port had violated the Water Code by having failed to obtain the City's consent and that the Port thus "lack[ed] the statutory power to condemn the Property."[2]

The Port moved to strike the City's intervention on the ground (among others) that the City had not been a party to the

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2005).

administrative portion[3] of the condemnation proceeding and the Water Code provision on which the City relies is inapplicable. The trial court overruled the Port's motion.

American and the City then jointly filed a plea to the trial court's jurisdiction. The jurisdictional plea asserted that the Water Code provision on which the City relies for its intervention requires the City's consent to the condemnation; that the City had not consented; and thus, that the trial court lacks subject-matter jurisdiction over the Port's condemnation proceeding. The City also filed a separate plea to the jurisdiction raising the same argument. The trial court denied both pleas after an evidentiary hearing.

The City appeals to this Court from the adverse ruling on its jurisdictional pleas. A majority of this Court voted to submit the case for en banc consideration and disposition. *See* Tex.R.App. P. 41.2(c).

## Standard of Review

A jurisdictional plea contests the trial court's subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). In reviewing the ruling on a jurisdictional plea, " 'we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties.' " *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003) (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001)). "[I]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). We construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). Whether the pleader has alleged facts that affirmatively demonstrate subject-matter jurisdiction is a legal question that we review de novo. *Id.*

We consider, as a preliminary matter, whether the City's consent to condemnation is a jurisdictional prerequisite to the trial court's exercise of jurisdiction, because the answer to that inquiry determines whether we in turn have subject-matter jurisdiction over this interlocutory appeal. *See Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) (holding that "an interlocutory appeal cannot be taken from the denial of a plea to the jurisdiction that does not raise an issue that can be jurisdictional" and that appellate court must dismiss interlocutory appeal "when the issue raised [in the jurisdictional plea] cannot implicate subject matter jurisdiction"); *accord Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 366 (Tex.2004).

Here, our jurisdictional determination turns on the interpretation of a provision of the Water Code. Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). Our primary goal in interpreting a statute

---

**3.** A condemnation proceeding may properly be characterized as both an administrative proceeding and a trial-court cause. *See Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex.2004). The filing of the condemnation petition in the trial court, followed by the court's appointment of the special commissioners, who hold a hearing and determine the property's value, is the administrative aspect. *Id.; see* Tex. Prop.Code Ann. §§ 21.012, 21.014 (Vernon 2004). If a party objects to the special commissioners' award by filing an objection in the trial court, the cause converts from an administrative matter to a normal trial-court proceeding. *Hubenak*, 141 S.W.3d at 179; *see* Tex. Prop. Code Ann. § 21.018 (Vernon 2004).

is to ascertain and to effectuate the Legislature's intent. *Id.* at 702. In doing so, we examine the statute's plain language. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We assume that the Legislature tried to say what it meant; therefore, the statute's words should be the surest guide to the Legislature's intent. *Fitzgerald*, 996 S.W.2d at 866.

■ In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses; rather, we examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001); *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (instructing courts to construe words and phrases in context). The Code Construction Act lists factors that may be considered in construing a statute, whether or not the statute is ambiguous on its face. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). These factors include, among other things, (1) the statute's objectives; (2) the circumstances under which the statute was enacted; (3) the statute's legislative history; (4) common law, former law, and similar provisions; and (5) the consequences of the statutory construction. *Id.* § 311.023(1)-(5); *Canales*, 52 S.W.3d at 702. We presume that the Legislature intended a just and reasonable result. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005); *Wilkins*, 47 S.W.3d at 493.

### Discussion

#### A. The Statute

Water Code chapter 62 contains the following provision:

### Section 62.106. Condemnation Proceedings

(a) The district[4] may exercise the power of eminent domain to condemn and acquire the right-of-way over and through any and all public and private land necessary:

(1) for the improvement of any river, bay, creek, or stream;

(2) for the construction and maintenance of any canal or waterway; and

(3) for any and all purposes authorized by this chapter.

. . . .

(d) No right-of-way may be condemned through any part of an incorporated city or town without the consent of the lawful authorities of that city or town.

TEX. WATER CODE ANN. § 62.106(a), (d) (Vernon 2004).

The merit of the City's position on interlocutory appeal rests on the proposition that section 62.106(d), which provides that "no right-of-way may be condemned" without the consent of a city through which the right-of-way runs, is a jurisdictional prerequisite to the Port's filing suit against a private landowner. *See id.* § 62.106(d). The City contends that the trial court lacks subject-matter jurisdiction over this lawsuit unless and until the Port obtains the City's consent. In contrast, the Port contends, even assuming that the consent provision applies, it does not operate to deprive the trial court of its subject-matter jurisdiction. It further contends that section 62.106(d) is inapplicable to its acquisi-

4. Within Water Code chapter 62, " '[d]istrict' means a navigation district operating under the provisions of Article XVI, Section 59, of the Texas Constitution." TEX. WATER CODE ANN. § 62.001(1) (Vernon 2004). The Port is such a district. *See* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247, *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 1042, § 1, 1987 Tex. Gen. Laws 3506, 3506–07.

tion of a fee simple interest—because such an interest is different in character from a right-of-way easement—and that the Legislature has narrowed the applicability of section 62.106(d) by later passing statutes that allow the Port to condemn without the consent of the City. *See, e.g., id.* § 62.107 (Vernon 2004) ("Acquisition of Land") & (a) ("Any district created under this chapter may acquire by gift, purchase, or condemnation and may own land adjacent or accessible to the navigable water and ports developed by it which may be necessary or required for any and all purposes incident to or necessary for the development and operation of navigable water or ports within the district, or may be necessary or required for or in aid of the development of industries on the land."). Thus, as to the merits, the parties disagree about whether Water Code section 62.106(d) applies and controls, *i.e.,* whether the phrase "no *right-of-way* may be condemned" without the City's consent applies to *fee simple* title interests, and whether this section should apply, given later-enacted section 62.107, which poses no municipal consent restriction. *Id.* §§ 62.106(d), 62.107(a) (emphasis added).

For reasons that we discuss, we conclude that the jurisdictional principles espoused by the Texas Supreme Court in *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71 (Tex.2000) and *Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172 (Tex.2004) ("*Hubenak III*"), govern this case, and thus we conclude that the statute at issue is not jurisdictional. Whatever

the merit of the parties' substantive arguments, to use a jurisdictional analysis to resolve the fray is unsupported by the statute.

## B. The Texas Supreme Court's Decision in *Dubai Petroleum Co. v. Kazi*

In *Kazi,* the Texas Supreme Court overruled earlier precedent to hold that a failure to meet a statutory prerequisite will not deprive a trial court of its subject-matter jurisdiction unless the statute evinces an intent that it do so.[5] 12 S.W.3d at 76. In so holding, the court expressed a strong preference for the finality of judgments. *Id.* To the court, allowing statutory prerequisites to be synonymous with *jurisdictional* limitations presents a fundamental problem: "a judgment will never be considered final if the court lacked subject-matter jurisdiction" because "'[t]he classification of a matter as one of [subject-matter] jurisdiction ... opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b at 118 (1982)).[6] The court relied upon "'the modern direction ... to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e at 113 (1982)); *accord Loutzenhiser,* 140 S.W.3d at 358–59.

5. *Kazi* overruled *Mingus v. Wadley,* 115 Tex. 551, 558, 285 S.W. 1084, 1087 (1926) (holding that "where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable"), *overruled by Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000).

6. Specifically, the *Kazi* court held that foreign-citizen plaintiffs' statutory burden to prove that India and the United States had equal treaty rights was not a jurisdictional prerequisite, but was instead a condition upon which the plaintiffs' right to relief depended. *Kazi,* 12 S.W.3d at 76–77.

■ Since *Kazi*, the Texas Supreme Court has reinforced its view that a statutory requirement is jurisdictional, as opposed to substantive, only when the Legislature's intent so indicates. *See Loutzenhiser*, 140 S.W.3d at 359. To determine whether such an intent exists, a reviewing court should examine the statutory language, including whether any consequences for non-compliance are specified. *Id.* In addition, the reviewing court may look to the statute's purpose. *See id.* at 360; *Harris County Emergency Servs. Dist. # 1 v. Miller*, 122 S.W.3d 218, 223 (Tex.App.-Houston [1st Dist.] 2003, no pet.).[7]

## C. Under *Kazi* and Its Progeny, Section 62.106(d) Is Not Jurisdictional

■ In Water Code section 62.106(d), the term "may not" (here, "*no* right-of-way *may* be condemned" without consent) indicates a prohibition. TEX. WATER CODE ANN. § 62.106(d) (emphasis added); TEX. GOV'T CODE ANN. § 311.016(5) (Vernon 2005) (" 'May not' imposes a prohibition and is synonymous with 'shall not.' "). Nothing about the mandatory nature of the section's statutory language, however, suggests that it is also a jurisdictional limitation. *See Essenburg v. Dallas County*, 988 S.W.2d 188, 188–89 (Tex.1998) (holding that statutory notice requirement, employing term "may not," was not jurisdictional). Several things suggest that it is not.

First, the Legislature expressed no consequence for failure to comply with this section—such as limiting the right to file a condemnation action until such consent is obtained, or requiring a process to settle the dispute between the two competing governmental interests. The statutory framework for a condemnation under the Property Code defines a specific administrative process before filing suit between the condemning governmental authority and the private landowner. The statute upon which the City relies is not a part of that framework. Section 62.106 neither binds a trial court with administrative findings, nor defines or limits its judicial review, nor establishes any grievance process to resolve the dispute between these two governmental authorities outside the trial court's milieu. *See Loutzenhiser*, 140 S.W.3d at 361 (quoting *Essenburg*, 988 S.W.2d at 189). Hence, the statute imposes no express jurisdictional constraints, thus leaving resolution of disputes concerning the statute to the courts.

Moreover, section 62.106 provides no independent cause of action to a city that is not afforded its opportunity to consent, nor any affirmative relief—administrative or otherwise. Yet, using a jurisdictional plea as a sword (for the City intervened in this suit), the City seeks to fashion both an independent claim under the Water Code

---

7. By legislation effective September 1, 2005, the Legislature has made "[s]tatutory prerequisites to a suit, including the provision of notice, ... jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2005); Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (establishing effective date). This change in the law does not apply to this suit, not only because of its effective date, but because this condemnation proceeding is not a "suit[ ] against a governmental entity." *See* TEX. GOV'T CODE ANN. § 311.022 (Vernon 2005)

("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Although *Loutzenhiser's* holding that "the failure to give notice of a claim as required by [Civil Practice and Remedies Code] section 101.101 does not deprive a court of subject matter jurisdiction over an action on the claim" may have been legislatively overruled in future cases by this amendment, the general propositions for which we cite *Loutzenhiser* are valid. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 364 (Tex.2004).

and obtain the relief it seeks (a halt to the Port's condemnation suit) without any adjudication of the rights and obligations of the parties, and without any participation by it in the adjudicative process. The City's rights under the statute instead should be a matter for interpretation by the courts, not a basis for depriving the courts of jurisdiction in the first instance.

Second, although the plain language of the statute is paramount, nothing in its history evidences a jurisdictional emphasis. The requirement first appeared in 1925,[8] but the parties point to no legislative history that clarifies that the provision is jurisdictional in nature. If anything, Water Code section 62.107, later-enacted in 1947, confers condemnation power upon the Port with no local consent requirement, and could suggest that the consent requirement does not apply. *See* Tex. Water Code Ann. § 62.107 (Vernon 2004).[9]

■■■■■ "Subject-matter jurisdiction exists when the nature of the case falls within the general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *Cervantes v. Tyson Foods, Inc.,* 130 S.W.3d 152, 156 (Tex.App.-El Paso 2003, pet. denied). Applying *Kazi,* if a statutory requirement "defines, enlarges, [or] restricts the class of causes the court may decide or the relief the court may award," then the requirement is jurisdictional. *Sierra Club v. Tex. Natural Res. Conservation Comm'n,* 26 S.W.3d 684, 688 (Tex.App.-Austin 2000), *aff'd on other grounds,* 70 S.W.3d 809 (Tex.2002).[10] If the requirement does none of these things, it is not jurisdictional, but is only a condition on which the plaintiff's right to relief may depend. *See id.* The requirement to obtain a city's consent for a right-of-way condemnation does not "define[ ], enlarge[ ], [or] restrict[ ] the class of causes the [county court at law] may decide or the relief the court may award." *See id.*

In fact, the Legislature has enacted a particular statute conferring jurisdiction over eminent-domain cases upon the Harris County Courts at Law. Tex. Gov't Code Ann. §§ 25.0003(a), 25.1032(a), (c) (Vernon 2004 & Supp.2005); Tex. Prop.Code Ann. § 21.001 (Vernon 2004). It is here that the Legislature established the class of causes that these trial courts can decide and the kind of relief that they can award. *See id.; cf. In re Bullock,* 146 S.W.3d 783, 789–90 (Tex.App.-Beaumont 2004, orig. proceeding) (holding that failure to meet statutory limitations requirement did not deprive county court at law of jurisdiction over bill-of-review proceeding, when statute gave county court at law plenary jurisdiction over subject matter of case).

Finally, reading the statute to withhold trial court jurisdiction is unnecessary to protect the interests of local government. Here, the affected city has intervened. It is hard to imagine that the Legislature intended to render an entire class of condemnation judgments void for failure to obtain consent when a timely intervention

---

8. *See* Act of February 19, 1925, 39th Leg., R.S., ch. 5, § 34, 1925 Tex. Gen. Laws 7, 19.

9. The Legislature enacted the predecessor to section 62.107 in 1947. *See* Act of April 16, 1947, 50th Leg., R.S., ch. 125, § 1, 1947 Tex. Gen. Laws 218, 218.

10. *Accord Helton v. R.R. Comm'n of Tex.,* 126 S.W.3d 111, 118 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Harris County Emergency*

*Servs. Dist. # 1 v. Miller,* 122 S.W.3d 218, 223 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Heart Hosp. IV, L.P. v. King,* 116 S.W.3d 831, 834 (Tex.App.-Austin 2003, pet. filed); *Kshatrya v. Tex. Workforce Comm'n,* 97 S.W.3d 825, 830–31 (Tex.App.-Dallas 2003, no pet.); *Hartford Underwriters Ins. Co. v. Hafley,* 96 S.W.3d 469, 473 (Tex.App.-Austin 2002, no pet.); *Tex. Dep't of Transp. v. Beckner,* 74 S.W.3d 98, 103 (Tex.App.-Waco 2002, no pet.).

would do—assuming for the moment that Water Code section 62.106 affords independent relief to an aggrieved local government. A simpler interpretation is that the provision confers standing upon a city to be heard, or that any municipal interest can be represented by the private landowner in a timely fashion, who if successful, will keep its land or command an above fair-market-value premium for its sale.[11] In this case, for example, the landowner has moved in the trial court to dismiss the proceeding on the very ground that the City urges here. If the City cannot preclude a landowner's *sale* of private property to another governmental entity, it should not have status to contest trial court jurisdiction and to subject the court's adjudication to future collateral attack in a condemnation proceeding, even if it may have standing to intervene to enforce a statutorily conferred right of consent. In contrast with statutes that courts have construed as jurisdictional—in part because they require administrative proceedings before a government can be haled into court as a defendant—here, the City seeks to use a statute offensively rather than defensively, by intervening to urge the dismissal of claims not brought against it.

For these reasons, Water Code section 62.106(d)'s consent requirement, even as-suming that it applies and controls in this case, is not jurisdictional and is not the proper subject of a jurisdictional plea. *See Kazi*, 12 S.W.3d at 76–77 (" 'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.' ") (quoting 21 C.J.S. *Courts* § 16, at 23 (1990)); *see also Hubenak III*, 141 S.W.3d at 183 (holding that following requirement from section 21.012(a) of Property Code's condemnation provisions is not jurisdictional: "If [one of certain entities exercising eminent-domain power] wants to acquire real property for public use *but is unable to agree with the owner of the property on the amount of damages*, the condemning entity may begin a condemnation proceeding . . . .") (emphasis added).

In *Hubenak III*, in a group of eleven consolidated appeals, the Texas Supreme Court held that, in condemnation actions brought by utilities, the utilities' failure to satisfy a statutory pleading requirement that the parties were "unable to agree" on damages did not deprive courts of subject-matter jurisdiction. *Hubenak III*, 141 S.W.3d at 183. The dissent distinguishes *Hubenak III* because that case involved a dispute between the condemning authority

11. In *Banta v. Chambers–Liberty Counties Navigation District*, 445 S.W.2d 61, 62 (Tex. Civ.App.-Beaumont 1969), *rev'd*, 453 S.W.2d 134 (Tex.1970), the court of appeals held that a landowner had no standing to raise the issue of a city's consent to a port condemnation project. Importantly, the Texas Supreme Court reversed this decision in *Chambers–Liberty Counties Navigation District v. Banta*, 453 S.W.2d 134, 137–38 (Tex.1970), and held that the affected city had passed a resolution that supported a finding of consent. The Texas Supreme Court reached the merits of the consent issue in that case, thereby implicitly recognizing that an affected landowner has standing to raise it. *See id.*

Moreover, contrary to the dissent's position in this case, in the court of appeals's decision in *Banta*, that court did not suggest that a city lacked standing to contest the action—rather, it suggested the opposite. *See Banta*, 445 S.W.2d at 62 (holding that matter of consent is not one of legal concern to "these defendants" because consent provision was for benefit of city). If section 62.106(d) fails to confer standing upon a city to intervene and contest a condemnation action, then it likewise would not confer any standing to contest the trial court's jurisdiction over the subject matter in a case between the landowner and the Port.

(a utility) and private landowners, whereas here, the dispute on appeal is between two governmental authorities. But the holdings in *Kazi* and *Hubenak* do not focus on the status of the parties as private litigants; rather, both represent an effort to "reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Hubenak III*, 141 S.W.3d at 183; *Kazi*, 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS 11 cmt. e (1982)). And, in particular with regard to the requirements relating to the condemnation actions, the court recognized that " 'jurisdiction' has proven to be a 'word of elastic, diverse, and disparate meanings.' " *Hubenak III*, 141 S.W.3d at 183 (quoting *Minto v. Lambert*, 870 P.2d 572, 575 (Colo. Ct.App.1994, cert.denied)).

In addition, the dissent distinguishes *Hubenak III* on the basis that the statute here does not provide any express remedy for a violation of the consent provision. However, we note that the statute in *Hubenak III* did not either—if the parties were unable to agree, then resolution was to be determined in a court. *See id.* Regardless, whether a statutory remedy be express, implied, or non-existent, a court of competent jurisdiction remains as the constant decision-maker.

## D. The Prospect of Collateral Attack Destabilizes Settled Real Property Interests

Water Code section 62.106(d)'s plain language does not indicate that it is jurisdictional for good reason: we deal here with real property interests, an area of the law that—perhaps more than some others—relies upon the finality of the determination of those interests. Given the nature of a condemnation action—the judicial transfer of real property—we cannot conclude that the Legislature intended for the consent requirement of section 62.106(d) to be jurisdictional, so as to open condemnation judgments to collateral attack at any time. *See Hubenak III*, 141 S.W.3d at 182 ("If the unable-to-agree requirement [contained in section 21.012(a) of the Property Code's condemnation provisions] were necessary to confer subject matter jurisdiction, then judgments in condemnation proceedings would be subject to collateral attack."); *see also Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991) (holding that lack of subject-matter jurisdiction is fundamental error that may be raised for first time at appellate level). The Texas Supreme Court's reasoning in *Hubenak III* with regard to the importance of finality in the condemnation proceeding involved in that case is equally applicable in this case, and we apply its reasoning here. *See* 141 S.W.3d at 183.

If section 62.106(d)'s consent requirement is jurisdictional, then a stranger to a property title—the aggrieved local government—can challenge the ownership of the condemned land even *after* the private landowner has been compensated, public funds have been fully expended, and government improvements to the property have been entirely completed. Real property is fixed and permanent, and American law promotes stability in the transfer of real property interests. Collateral attacks based upon subject-matter jurisdiction undermine this stability, creating potential defects in title stemming from a long-forgotten condemnation proceeding.

The City's contention that the Port's failure to obtain the City's consent deprives a trial court of its subject-matter jurisdiction in a condemnation action thus imposes harsh consequences to settled in-

terests.[12] Absent express statutory language, we should not conclude that one local government keeps the keys to the courthouse—and the validity of a judgment—over the head of another local governmental entity. Rather, the Port and the City have concomitant rights to seek a judicial determination to resolve the applicability and the merit of their positions, in a court.[13]

### E. Because Section 62.106(d) Is Not Jurisdictional, We Lack Jurisdiction to Hear the Appeal.

The Texas Supreme Court has determined that "an interlocutory appeal cannot be taken from the denial of a plea to the jurisdiction that does not raise an issue that can be jurisdictional." *Simons,* 140 S.W.3d at 349; *Loutzenhiser,* 140 S.W.3d at 365. An appellate court thus should dismiss an interlocutory appeal "when the issue raised [in the jurisdictional plea] cannot implicate subject matter jurisdiction." *Simons,* 140 S.W.3d at 349.[14] For the reasons discussed, the issue raised in the City's jurisdictional plea—the Port's failure to obtain the City's consent to the condemnation under Water Code section 62.106(d)—is not jurisdictional. Accordingly, we dismiss this appeal for want of jurisdiction and do not determine the merit of the City's claim in intervention.[15] *See Simons,* 140 S.W.3d at 343; *Loutzenhiser,* 140 S.W.3d at 365–366.

12. The dissent contends that condemnation judgments should be subject to collateral attack if the condemning authority fails to obtain consent, theorizing that proceeding without consent is an ultra vires act that should render the judgment void. For this proposition, the dissent relies upon *City of Galveston v. Mann,* 135 Tex. 319, 143 S.W.2d 1028 (Tex.1940). In that case, however, the Texas Supreme Court denied a request by the city that it issue a writ of mandamus to compel the Attorney General to issue two series of bonds of the city. *Id.* at 1035. The case did not involve subject-matter jurisdiction, the condemnation power of a navigation district, or a consent requirement. *See id.* None of the court's holdings in that case are incongruent with our holding in this case that the consent requirement is not jurisdictional. Moreover, the *Mann* court decided the case long before *Kazi* and *Hubenak III,* in which the court weighed the risks of categorizing all statutory mandates as jurisdictional against the competing concern of finality of judgments, and opted to adopt the prevailing modern view that statutory mandates are not to be presumed to be jurisdictional.

13. The dissent contends that the City's right to require consent is illusory if it is not jurisdictional because the City will not know of the existence of a condemnation proceeding by an authority that has failed to seek its consent. This assumes that a City will not have at least constructive notice of such proceedings, but because a condemnation action must be filed in the county in which the property is located, this cannot be the case. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.011 (Vernon 2002) ("Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located."). More important, in this case, the City has *actual* notice of the proceedings and has intervened—thus, the argument that the consent provision must be jurisdictional to have any teeth to it is not borne out by the facts in this case.

14. In contrast, if "the issue raised [in the jurisdictional plea] *could* defeat the court's subject matter jurisdiction, even if it did not do so in a particular case," then the appellate court may not dismiss the appeal. *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 349 (Tex.2004) (emphasis in original).

15. The rule in *Loutzenhiser* and *Simons* requires that we dismiss this appeal because "the issue raised [in the City's jurisdictional pleas] cannot implicate subject matter jurisdiction." *Simons,* 140 S.W.3d at 349; *accord Loutzenhiser,* 140 S.W.3d at 365. We note, however, that the Texas Legislature has provided that "[a] person may appeal from an

## Conclusion

The trial court has jurisdiction to hear the subject matter of this suit. In such an instance, we lack jurisdiction to decide the issues presented here via an interlocutory appeal. Conferring jurisdictional status upon the statute at issue would open settled real property rights to collateral attack by local government, and halt another government project by jurisdictional fiat, even for already adjudicated real property interests.

We hold that Water Code section 62.106(d)'s consent prerequisite, assuming that it applies and controls in this case, is not jurisdictional and thus is not the proper subject of a jurisdictional plea. We therefore lack jurisdiction over this appeal and dismiss the case.

En banc consideration was requested.

A majority of the justices of the Court voted to grant en banc consideration.

The en banc Court consists of Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

Justice KEYES, joined by Justice HANKS, dissenting.

Chief Justice RADACK, recused.

interlocutory order of a district court, county court at law, or county court that: ... grants or denies a plea to the jurisdiction by a governmental unit...." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004–2005). The language of section 51.014(a)(8) suggests that an appellate court has interlocutory jurisdiction based on the type of ruling made below (*i.e.*, one granting or denying a governmental unit's jurisdictional plea), rather than on the substance of the plea. Under the statute, if the party asserting the jurisdictional plea has not raised a truly jurisdictional issue within the plea, that defect is a reason to deny the plea; however, the trial court's rul-

EVELYN V. KEYES, J., dissenting.

I respectfully dissent. I would reverse the order denying the plea to the jurisdiction of appellant, the City of Seabrook ("the City"), and render judgment that the City's jurisdictional plea be granted and that the underlying condemnation proceedings brought by the Port of Houston Authority ("the Port") against American Acryl NA, L.L.C. and American Acryl L.P. (together, "American") be dismissed.

### Construction of Water Code in Section 62.106(d)

#### A. The Issue

This case turns on whether a navigation district's compliance with Water Code section 62.106(d)[1]—which provides that "[n]o right of way may be condemned" by a navigation district without the prior consent of a city through which the right-of-way runs—is a jurisdictional prerequisite to a district court's adjudication of condemnation proceedings brought by the navigation district against a landowner whose property lies within a city.

Section 62.106, "Condemnation Proceedings," provides:

> (a) The district may exercise the power of eminent domain to condemn and acquire the right-of-way over and

ing is still an order ruling on the plea, for which the statute authorizes an appeal. In contrast, the rule in *Loutzenhiser* and *Simons* requires, in circumstances in which there is a disagreement as to the jurisdictional nature of the statute on which the plea is based, that the appellate court, in effect, determine the merit of the jurisdictional plea in order to determine whether it has jurisdiction to hear the appeal in the first place. We follow the rule in *Loutzenhiser* and *Simons* as binding authority.

1. *See* TEX. WATER CODE ANN. § 62.106(d) (Vernon 2004).

through any and all public and private land necessary:

(1) for the improvement of any river, bay, creek, or stream;

(2) for the construction and maintenance of any canal or waterway; and

(3) for any and all purposes authorized by this chapter.

. . .

(d) *No right-of-way may be condemned through any part of an incorporated city or town without the consent of the lawful authorities of that city or town.*

TEX. WATER CODE ANN. § 62.106(a), (d) (Vernon 2004) (emphasis added). The City views section 62.106(d)'s consent prerequisite as jurisdictional. Consequently, it argues that the trial court lacks subject-matter jurisdiction over the Port's condemnation action unless and until the Port obtains the City's consent. In contrast, the Port argues that the section's consent prerequisite is not jurisdictional, assuming that section 62.106(d) applies and controls (a position that the Port also contests and that the majority opinion does not reach).

As the majority recognizes, whether the City's consent to condemnation is a jurisdictional prerequisite determines, in turn, whether we have subject-matter jurisdiction over this interlocutory appeal. *See Tex. Dep't of Crim. Justice v. Simons,* 140 S.W.3d 338, 349 (Tex.2004) (holding that "an interlocutory appeal cannot be taken from the denial of a plea to the jurisdiction that does not raise an issue that can be jurisdictional" and that appellate court must dismiss interlocutory appeal "when the issue raised [in the jurisdictional plea] cannot implicate subject matter jurisdiction"); *accord Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 365 (Tex.2004). Because I agree with the City that the consent provision in section 62.106(d) is jurisdictional and that, there-

fore, the trial court does not have jurisdiction to adjudicate the underlying condemnation proceedings against American, I would grant the City's plea to the jurisdiction and render judgment that the trial court dismiss the proceedings.

**B. Jurisdictional Nature of Consent Provision in Section 62.106(d)**

To prevail in condemnation proceedings, the condemning entity must prove that it has satisfied the various formal prerequisites necessary to proceed in the trial court. *Whittington v. City of Austin,* 174 S.W.3d 889, 896 (Tex.App.—Austin 2005, pet. denied); *see also Hubenak v. San Jacinto Gas Transmission Co. (Hubenak III),* 141 S.W.3d 172, 182 (Tex.2004). The courts are constrained to give effect to each of these requirements in construing the lawful powers conferred upon condemning entities, such as navigation districts, proceeding under section 62.106 of the Texas Water Code. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *Wood v. Bird,* 32 S.W.2d 271, 273 (Tex.Civ.App.—El Paso 1930, no writ.). Moreover, these requirements are mandatory. *See Hubenak III,* 141 S.W.3d at 180 (construing similar statutory provisions in section 21.012(b) of Texas Property Code as mandatory requirements upon commencement of condemnation proceeding); *Brazos River Conservation & Reclamation Dist. v. Costello,* 135 Tex. 307, 143 S.W.2d 577, 580 (Tex.1940) (holding that statute vested district court with jurisdiction to determine that every prerequisite of Constitution was fully complied with before property could be put to public use, i.e., that requirements were all mandatory).

Although all prerequisites to a condemnation suit are mandatory, not all are jurisdictional. *See Hubenak III,* 141 S.W.3d at 180 (construing "unable-to-agree" provi-

sion in Property Code as mandatory, but not jurisdictional); *see also Whittington,* 174 S.W.3d at 896 (observing that at least some prerequisites to exercise of eminent-domain power are mandatory, but not jurisdictional). As the supreme court has pointed out, "The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived." *Loutzenhiser,* 140 S.W.3d at 359. By contrast, "the failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law." *Id.* If a petition does not allege jurisdictional facts, the plaintiff's suit is subject to dismissal for lack of subject-matter jurisdiction on a plea to the jurisdiction unless it is possible to amend the pleadings to confer jurisdiction. *Martinez v. City of El Paso,* 169 S.W.3d 488, 492 (Tex.App.—El Paso 2005, pet. denied).

I agree with the majority that, after *Dubai Petroleum Co. v. Kazi,* the failure to comply with a non-jurisdictional statutory requirement—even a mandatory one—may result in the loss of a claim, but that such non-compliance does not deprive the trial court of subject-matter jurisdiction over that claim. *See Kazi,* 12 S.W.3d 71, 76–77 (Tex.2000); *accord Loutzenhiser,* 140 S.W.3d at 359. The issue here, however, is not the City's loss of a claim against the Port. The issue is the City's loss of its sovereign right to consent to the Port's exercise of the power of eminent domain within the City's boundaries—a right conferred upon it (and upon all incorporated cities and towns) by the Legislature as a restriction on navigation districts' exercise of the power of eminent domain under section 62.106 of the Water Code.

The essential distinction between this case and *Hubenak III* is that condemna-tion proceedings adjudicate the rights of *landowners vis a vis* governmental authorities exercising the *power of eminent domain.* They do not adjudicate the rights of *sovereign entities vis a vis* each other. Whether the City is entitled both to notice of the Port's intent to condemn property within its boundaries and the opportunity to refuse its consent to those condemnation proceedings is a question of law that goes to the scope of the power of eminent domain granted the Port by the Legislature, not to the propriety of the Port's exercise of that power against a landowner. Because I agree with the City that its consent is a jurisdictional condition precedent to the Port's exercise of the power of eminent domain, and because the Port failed to comply with that condition precedent, I would hold that the trial court lacks subject-matter jurisdiction over the Port's condemnation proceedings against American and that the proceeding must, therefore, be dismissed.

Since *Kazi,* the Supreme Court of Texas has indicated that whether a statutory requirement is a jurisdictional or substantive bar depends on the Legislature's intent. *See Loutzenhiser,* 140 S.W.3d at 359; *see also Kazi,* 12 S.W.3d at 76. Indeed, the dominant rule controlling the construction of a statute is to ascertain the intention of the Legislature expressed in the statute. *Costello,* 143 S.W.2d at 580 (construing statute authorizing condemnation of property by eminent domain). The inquiry begins with the statutory language, including whether any consequences for non-compliance are specified. *Loutzenhiser,* 140 S.W.3d at 359; *see also Fitzgerald,* 996 S.W.2d at 865–66 (holding that court's primary goal in interpreting statute is to ascertain and to effectuate Legislature's intent and that, in ascertaining legislative intent, courts begin with statute's plain language). Another indicator of the Legislature's intent, which our Court has found

particularly pertinent when the statute is silent on the consequences of non-compliance, is the statute's purpose. *See Loutzenhiser*, 140 S.W.3d. at 360; *Harris County Emergency Servs. Dist. No. 1 v. Miller*, 122 S.W.3d 218, 223 (Tex.App.— Houston [1st Dist.] 2003, no pet.). The statute may be read in connection with the constitutional provisions authorizing its enactment, and those constitutional provisions may be read into and considered a part of the statute. *Costello*, 143 S.W.2d at 580.

The power of eminent domain is a constitutional power essential to state governments and "inseparable from sovereignty," but its sphere is limited. *United States v. Carmack*, 329 U.S. 230, 236–38, 67 S.Ct. 252, 254–55, 91 L.Ed. 209 (1946); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 17. The power of eminent domain must be conferred either expressly or by necessary implication by the Legislature. *Coastal States Gas Prod. Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828, 831 (Tex.1958); *Saunders v. Titus County Fresh Water Supply Dist. No. 1*, 847 S.W.2d 424, 427 (Tex.App.— Texarkana 1993, no writ); *Wood*, 32 S.W.2d at 273 (holding that right of eminent domain may not be exercised unless plain letter of law permits it). "[T]he legal requirements governing condemnation proceedings 'must be strictly followed.' " *Whittington*, 174 S.W.3d at 899 (quoting *Horton v. Mills County*, 468 S.W.2d 876, 878 (Tex.App.—Austin 1971, no writ)). Condemnation statutes need not, however, be given the narrowest meaning of which they are susceptible. *Pate*, 309 S.W.2d at 831. Rather, "[t]he language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose

and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as it spirit and purpose." *Id.* The constitutional and statutory limitations on a state entity's exercise of the power of eminent domain impliedly prohibit takings outside those limitations. *See Whittington*, 174 S.W.3d at 896 ("By requiring takings to be solely for public purposes, these limitations impliedly prohibit takings for private purposes or benefit.").

The City contends that the Port condemned American's land pursuant to section 62.106 of the Water Code.[2] The purpose of section 62.106 is to provide for the exercise of the power of eminent domain by a navigation district operating under the provisions of article XVI, section 59 of the Texas Constitution, but within the confines of the power conferred on the district by section 62.106. Specifically, in section 62.106, the Texas Legislature has conferred the power on navigational districts "to condemn and acquire the right-of-way over and through any and all public and private land necessary" for the improvement of a "any river, bay, creek, or stream for the construction and maintenance of any canal or waterway," and for any other purpose authorized by Chapter 62 of the Water Code, "instituted under the direction of the [navigation and canal] commission and in the name of the district," subject to the condition that no right-of-way may be condemned under section 62.106 "through any part of an incorporated city or town without the consent of the lawful authorities of that city or town." TEX. WATER CODE ANN. §§ 62.001(definitions), 62.106(a),(b). The limits of that

---

**2.** The Port challenges this contention, upon which the City's plea to the jurisdiction depends. The Port asserts that it has the authority to condemn the land at issue under other, independent provisions of the Water

Code and thus section 62.106 does not control the jurisdiction of the underlying condemnation proceedings. I address the Port's arguments below.

power are set out as prerequisites to the maintenance of condemnation proceedings. Under the plain language of section 62.106, no property within an incorporated city or town may be condemned by a navigation district except as necessary to effectuate the purposes set out in that section—and then only with the consent of the lawful authorities of the incorporated city or town within whose boundaries the land the district seeks to condemn lies. *See id.* § 62.106(d). A navigation district operating under article XVI, section 59 simply has no statutorily-conferred authority to condemn land under section 62.106(d) without obtaining such consent.

Here, the Port did not obtain the City's consent to the condemnation proceedings against American. Therefore, if the consent prerequisite is jurisdictional, the proper remedy is to dismiss the Port's futile eminent-domain proceedings against American. If the City's consent is not jurisdictional, however, the Port can continue with its condemnation proceedings, and the City simply loses its chance to object to the Port's failure to obtain its consent because the statute provides no remedy for such a failure—unless, that is, the City learns of the proceedings, successfully intervenes and persuades the trial court that the proceedings should not go forward. In the latter case, the Port's failure to obtain the City's consent is a trivial matter without consequences; in the former, it is a matter of jurisdictional consequence.

The fact that the Legislature did not expressly provide a mechanism for cities to assert a right intended to protect their sovereignty within their borders confirms the conclusion that 62.106(d)'s consent prerequisite is jurisdictional, not that it is trivial. *Cf. City of Laredo v. Almazan,* 179 S.W.3d 132, 135 (Tex.App.—San Antonio 2005, no pet.) (concluding that statute was not jurisdictional because, among other things, it provided non-compliance penalty within statutory scheme). For example, in no case does either the Water Code or the Property Code provide an express means for cities to assert the right to consent to right-of-way condemnation through their territory. Generally speaking, the law contemplates that water districts seeking to condemn a right-of-way file a petition against the private property owner, not the non-owner city through whose territory the right-of-way will run.[3] There is no express provision in the Water Code's or Property Code's condemnation provisions for making the affected, non-owner city a party to the condemnation proceeding.

Although this Court has no jurisdiction in this interlocutory appeal to determine whether the City had the right to intervene in this condemnation suit,[4] and I do not purport to make such a determination,

---

3. *See* Tex. Water Code Ann. § 62.106 (Vernon 2004) (allowing Water District to exercise eminent-domain power to acquire rights-of-way, but subject to cities' or towns' consent under certain circumstances), § 62.107 (allowing water district to acquire land, including by condemnation); *see also* Tex. Prop. Code Ann. § 21.011 (Vernon 2004) ("Exercise of the eminent domain authority in all cases is governed by Sections 21.012 through 21.016 of this code."); *id.* § 21.012 (Vernon 2004) (allowing condemning authority to begin condemnation proceeding against property owner).

4. The Port moved to strike the City's intervention, and the trial court denied the motion. We have no jurisdiction to review the propriety of that ruling. *See Ahmed v. Shimi Ventures, L.P.,* 99 S.W.3d 682, 688 (Tex. App.-Houston [1st Dist.] 2003, no pet.) ("We must strictly construe [Civil Practice and Remedies Code] section 51.014's grant of interlocutory jurisdiction because the Legislature intended it to be a narrow exception to the general rule that only final judgments are appealable.").

I observe that there is no mechanism in the Water Code or Property Code that provides for such intervention, or otherwise ensures that a condemning authority must give a municipality notice of its intentions, or provides any avenue for a city to protest a condemnation proceeding by another governmental entity intruding upon its sovereignty.

It is significant that the sole court that expressly considered the purpose of section 62.106(d)'s predecessor in the context of condemnation proceedings has concluded that the statute was enacted "for the benefit of the municipality[,]" so that there would "be no conflict in the use to which land in a city could be put, as between a navigation district and a city." *Banta v. Chambers–Liberty Counties Navigation Dist.* (*Banta I*), 445 S.W.2d 61, 62 (Tex. Civ.App.—Beaumont 1969), *rev'd on other grounds,* (*Banta II*), 453 S.W.2d 134 (Tex. 1970).[5] If, indeed, section 62.106(d) was enacted for the benefit of municipalities like the City, but that provision's consent prerequisite is not jurisdictional, then a municipality's right to consent is entirely illusory because the municipality itself is not made a necessary party to the proceedings by the terms of the statute, the statute provides no means for the municipality to assert the violation of its right, and no statutory remedy is provided for a district's violation of the right to consent.

It is perverse to interpret section 62.106 as providing an illusory right without a remedy. It is equally perverse to interpret section 62.106 as requiring that a *municipality* that is not a necessary party to condemnation proceedings, that has no statutory right or duty to assert its "claim" under the statute, and that has no statutory remedy for a violation of its rights, nevertheless loses its statutorily mandated veto power over a navigation district's assertion of the power of eminent domain

---

**5.** In *Banta I,* a private property owner appealed a judgment in a condemnation suit brought by a navigation district. *See Banta v. Chambers-Liberty Counties Navigation Dist.,* 445 S.W.2d 61, 62 (Tex. Civ. App.-Beaumont 1969), *rev'd on other grounds,* 453 S.W.2d 134 (Tex. 1970). The condemned land fell entirely within the city limits of Liberty, Texas. *Id.* The city had adopted a resolution allowing the condemnation, but the property owner, relying on section 62.106(d)'s predecessor's consent prerequisite, argued that the land that was actually condemned did not fall squarely within the land described by the resolution. *Id.* A jury found that the condemned land fell within the land described in the city's resolution. *Id.* The court of appeals concluded that it did not need to determine whether sufficient evidence supported the jury's determination because the court held that the landowner had no standing to assert the city's lack of consent to the condemnation as a bar: the court reasoned that "it was [not] the intention of the legislature to make this consent by the city a condition precedent which could be raised and relied upon by a landowner" because the statute's purpose was to protect cities, not individual landowners. *Id.* On petition for writ of error,

the Supreme Court of Texas considered the property owner's challenge to the sufficiency of the evidence underlying this jury determination. *Chambers-Liberty Counties Navigation Dist. v. Banta (Banta II),* 453 S.W.2d 134, 137–38 (Tex. 1970).

> Clearly, in *Banta I* and *II,* both the parties and the courts considered the city's consent a condition precedent to the initiation of condemnation proceedings by the navigation district, and, therefore, that consent was obtained. The issue raised by the landowner was whether the city's consent extended to all of the land condemned, an evidentiary issue that could be decided in the condemnation proceedings. Because the supreme court agreed with the lower courts that the resolution encompassed all the land in question, the question of the proper disposition of the case had the proceedings been initiated without the city's consent was not reached. The issue in the instant case—namely, the city's standing to assert an invasion of its sovereign rights by the navigation district's initiation of condemnation proceedings—was not presented in *Banta I* or *II.*

within the municipality's boundaries if the *district* chooses not to seek that consent and the municipality does not find out before the land is condemned, find a vehicle to protest the violation of its right to consent, and timely assert that right. Either way, the result is absurd. Courts should not read a statute to create an absurd result. *Loutzenhiser*, 140 S.W.3d at 356 (quoting *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996)). Rather, "[i]n enacting a statute, it is presumed that ... (3) a just and reasonable result is intended." TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005). "[W]ords, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended." *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring) (quoted in *Loutzenhiser*, 140 S.W.3d at 356 n. 20).

Furthermore, I disagree that the *Hubenak III* holding has the broad sweep that the majority attributes to it and that it automatically renders all the mandatory requirements for the condemnation of land non-jurisdictional, regardless of the purpose of a requirement, the person or entity at whom it is directed (i.e., a party or non-party, sovereign entity or landowner), or the existence or non-existence of a statutory means for protesting a violation of the statute or a statutory remedy for the violation. First, the *Hubenak III* court held only that the "unable-to-agree" requirement—which applies to the relationship between the condemning authority and the *landowner*—was non-jurisdictional. *See Hubenak III*, 141 S.W.3d at 180. The court did not summarily declare *all* statutory condemnation requirements to be non-jurisdictional. *See id.*; *see also Whittington*, 174 S.W.3d at 896.

Second, the unable-to-agree requirement requires the condemning authority to show, as a prerequisite to maintaining a condemnation suit, that it and the landowner could not agree on condemnation damages. *See* TEX. PROP.CODE ANN. § 21.012(a) (Vernon 2004). The condemning authority and the landowner are both necessary parties to the condemnation proceeding. *See id.* § 21.012. Under both Water Code chapter 62 and the Property Code, in contrast, a city that has the right to give or to withhold its consent to right-of-way condemnation within its territory is *not* contemplated, within the applicable statutes, as a party to the condemnation proceeding. *See* TEX. WATER CODE ANN. §§ 62.106, 62.107 (Vernon 2004); TEX. PROP.CODE ANN. §§ 21.011, 21.012.

Third, the purpose of the unable-to-agree requirement is "to 'forestall litigation and to prevent needless appeals to the courts when the matter may have been settled by negotiations between the parties.'" *Hubenak III*, 141 S.W.3d at 184. Protesting the failure of a district to comply with this requirement within the context of condemnation proceedings does not create more litigation. Rather, the condemnation proceedings provide both a means for a landowner to protest that the condemning authority has not satisfied the unable-to-agree requirement and a statutory remedy for a wrongful taking. By contrast, the purpose of Water Code section 62.106(d)'s consent provisions is to assure that there is "no conflict in the use to which land in a city could be put, as between a navigation district and a city." *Banta I*, 445 S.W.2d at 62. Because condemnation proceedings provide neither a means for a city to protest that it did not consent to a navigation district's condemnation of land within its boundaries nor a remedy for the district's violation of the consent provisions, the purpose of the consent provision cannot be satisfied within

the context of condemnation proceedings and continuing the proceedings does not resolve the legal issues raised by non-consent. Given these critical differences between the parties and the statutory provisions involved, I would hold that *Hubenak III*'s cited holding does not apply to section 62.106(d)'s consent prerequisite.

It is vital that courts distinguish between the positions of landowners whose property a sovereign seeks to condemn in valid condemnation proceedings and the positions of governmental entities, like the City, whose sovereign rights are infringed by constitutionally and statutorily invalid condemnation proceedings. At least eight times the Water Code, along with other codes' provisions regulating various specialized districts, requires a city's consent before a district may perform various acts, condemnations, or services within the city's territorial or extraterritorial jurisdiction.[6] Although these laws sometimes provide for an alternative means for the district's act, condemnation, or service to be accomplished within a city's *extraterritorial* jurisdiction when the city fails to consent,[7] *no* Water Code provision provides

---

6. *See* TEX. WATER CODE ANN. § 49.215(a) (Vernon 2000) ("A district providing potable water and sewer utility services to household users shall not provide services or facilities to serve areas outside the district that are also within the corporate limits of a city without securing a resolution or ordinance of the city granting consent for the district to serve the area within the city."); *id.* § 54.016(a), (d) (Vernon 2002) (Providing, "No land within the corporate limits of a city or within the extraterritorial jurisdiction of a city, shall be included in a district unless the city grants its written consent, by resolution or ordinance, to the inclusion of the land within the district...." and "Under no circumstances shall land within the corporate limits of a city be included in a district without the written consent, by ordinance or resolution, of the city."); *id.* § 59.006(a) (Vernon 2004) ("Land in the corporate limits of a city or in the extraterritorial jurisdiction of a city may not be included in a district unless the city grants its written consent by resolution or ordinance to the inclusion of the land in the district."); *id.* § 61.162 (Vernon 2004) ("A district may acquire and take over, by lease or rental agreements, for a period of not less than 25 years, the docks, wharves, buildings, railroads, land, improvements, and other facilities already provided, constructed, or owned by any incorporated municipality situated within the district only with the consent of the lawful authorities of the municipality and on terms mutually agreed on by the district and the municipality."); *id.* § 62.106(d); *id.* § 63.156(d) (Vernon 2004) ("No right-of-way can be condemned through any part of an incorporated city or town without the consent of the lawful authorities of the city or town.");

*see also* TEX. LOC. GOV'T CODE ANN. § 42.042(a) (Vernon 1999) ("A political subdivision, one purpose of which is to supply fresh water for domestic or commercial use or to furnish sanitary sewer services, roadways, or drainage, may not be created in the extraterritorial jurisdiction of a municipality unless the governing body of the municipality gives its written consent by ordinance or resolution in accordance with this subsection and the Water Code."); *id.* § 413.063(b) (Vernon Supp. 2005) ("The board may not provide for the extension of service to an area within the boundaries or extraterritorial jurisdiction of a municipality or within a conservation and reclamation district created under Section 59, Article XVI, Texas Constitution, without the consent of the governing body of the municipality or district."); TEX. SPECIAL DIST. LOC. LAWS CODE ANN. § 6601.103(b) (Vernon Supp. 2005) ("Right-of-way in a municipality may not be condemned without the consent of the governing body of the municipality.").

7. *See* TEX. WATER CODE ANN. § 54.016(b)-(d) (Vernon 2002) (allowing for majority of electors in area in city's extraterritorial jurisdiction that is proposed to be included in district, or owners of 50% or more of land in said area, to petition city's governing body for city's provision of services that district would provide; further providing that, if said electors or land owners and city fail to contract for city to provide said services, district will be authorized to provide said services); *id.* § 59.006(b)-(c) (Vernon 2004) ("If the governing body of a city fails or refuses to grant permission for the inclusion of land in its extraterritorial jurisdiction in a district...,

such an alternative means to authorize the district's act, condemnation, or service *within* a city's territory. Rather, the Water Code and the related codes mentioned above consistently require a city's consent to these acts—including certain right-of-way condemnations[8]—when they are conducted within the city's territory, and they do not provide for an alternative means to act if consent is withheld. These statutes make it clear that the Legislature intended to require the consent of cities to certain invasive acts, including condemnation proceedings by another sovereign entity, within their own territory, and so to protect them in that situation. The only way to carry out this clear intent satisfactorily is to construe section 62.106's consent prerequisite to be jurisdictional.

For all the foregoing reasons, I would hold that the consent of an incorporated city or town to a taking by a navigation district within its boundaries is a condition precedent to the trial court's exercise of jurisdiction over condemnation proceedings brought by the navigation district against a landowner and that proceedings brought without such consent must be dismissed for lack of subject-matter jurisdiction. Nor am I persuaded to the contrary by the majority's arguments, which I address below.

### Objections to Majority's Reasoning

In addition to drawing the conclusion that the consent provision in section 62.106(d) is jurisdictional, rather than non-jurisdictional, as the majority holds, I disagree with the majority's reasoning in support of its judgment on a number of important points.

### A. Interference with "Settled" Property Rights

I disagree with the majority's reasoning that the potential instability to "settled" property interests that might arise from finding the consent prerequisite jurisdictional necessarily requires the conclusion that the prerequisite is not jurisdictional. The Port raises a related argument, that the purpose of its rights to exercise the power of eminent domain will be thwarted by finding section 62.106(d)'s consent prerequisite to be jurisdictional.

I fully recognize the concern expressed by the supreme court in *Hubenak III* that "[i]f the '*unable to agree*' requirement [contained in section 21.012(a) of the Property Code's condemnation provisions] were necessary to confer subject matter jurisdiction, then judgments in condemnation proceedings would be subject to collateral attack" by landowners. *Hubenak III*, 141 S.W.3d at 182 (emphasis added). But the possibility of undoing *settled* condemnation proceedings by a collateral attack by a *landowner* protected by statutory rights and remedies is not the issue here.

---

the person or entity desiring to create the district may petition the governing body of the city to make available the water, sewer, or drainage service contemplated to be provided by the district.... Failure of the governing body of the city and the requesting district to execute a mutually agreeable contract providing for the service requested... constitutes authorization for the inclusion of land in the district under this section."); TEX. LOC. GOV'T CODE ANN. § 42.042(b)-(f), (k) (Vernon 1999) (similar).

**8.** *See* TEX. WATER CODE ANN. § 62.106(d) ("No right-of-way may be condemned through any part of an incorporated city or town without the consent of the lawful authorities of that city or town."); *id.* § 63.156(d) ("No right-of-way can be condemned through any part of an incorporated city or town without the consent of the lawful authorities of the city or town."); TEX. SPECIAL DIST. LOC. LAWS CODE ANN. § 6601.103(b) ("Right-of-way in a municipality may not be condemned without the consent of the governing body of the municipality.").

Section 62.106(d) plainly states that the navigation district's power of eminent domain is subject to the consent of the "lawful authorities" by the city. There is no statutory grant of power to a navigation district to condemn a right of way through a part of a city without such consent. *See* TEX. WATER CODE ANN. § 62.106(d). As shown above, the power of eminent domain is a constitutional power to take property, and that power must be conferred either expressly or by necessary implication by the Legislature. *See Pate*, 309 S.W.2d at 831; *Saunders,* 847 S.W.2d at 427. If a navigation district, having been granted a limited statutory power of eminent domain, exceeds its constitutional and legislative grant of authority, it necessarily acts *ultra vires* and violates the Constitution. *See Saunders,* 847 S.W.2d at 427–29 (holding that taking of property by water district pursuant to eminent-domain powers without statutory authority violated Texas Constitution Article I, section 17); *see also City of Wichita Falls v. Thompson,* 431 S.W.2d 909, 911–13 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.) (holding that although power of eminent domain inheres in sovereignty and is limited by constitutional provisions only, neither State nor its subdivision may exercise power unless lawmaking authority has conferred such right by statutory enactment; exercise of such rights beyond delegated powers is abuse of discretion). It is, therefore, not at all unjust that the remedy for a navigation district's *ultra vires* action in taking property within a city without the city's consent is a collateral attack by the sovereign whose authority the district has infringed that undoes the exercise of that illegitimate authority and requires the district to obtain consent before proceeding with its plans. Such proceedings cannot be called "settled" merely because a navigation district succeeds in concealing its violation of

the statute until the condemnation proceedings have ended.

Indeed, the Texas Supreme Court long ago indicated that a collateral attack is to be expected if a condemning authority infringes the rights of another sovereign in the exercise of its power of eminent domain. *See City of Galveston v. Mann,* 135 Tex. 319, 143 S.W.2d 1028, 1034 (Tex.1940) (holding that erection by city of pier beyond seawall, hence "on and over" waters of Gulf of Mexico and over soil beneath waters owned by State and held in trust for all people, "would be an encroachment, at the least, upon the prima facie property rights of the sovereign, that is, the State, so far as the tide lands are concerned, and an encroachment upon the unquestioned property rights of the State in so far as such structure is proposed to be projected out into the deep waters of the sea ... subject to be removed at the instance of the State, whether the same should tend to obstruct navigation or otherwise"). The supreme court further held in *Mann* that, by authorizing Galveston to regulate and to police structures built in the waters adjacent to the beach of the city, "it is not to be implied that the Legislature intended to give approval to any invasion of the rights of the State." 143 S.W.2d at 1034; *Crary v. Port Arthur Channel & Dock Co.,* 92 Tex. 275, 47 S.W. 967, 971 (Tex.1898) (holding that consent of United States Secretary of War was not required by statute authorizing Port Arthur Channel and Dock Company to condemn land and water right of way for construction of channel and docks, but nonetheless warning that "[s]hould the government, after appellant's property has been taken, see proper to obstruct the enterprise and prevent either the completion of the work or the use of the channel, the land would be discharged of its burden"). The same reasoning and policy concerns apply here and mandate the conclusion that a navigation district's

condemnation of land within a city without the city's consent is an infringement of the sovereign rights of the city.

By contrast, if as the majority holds, a navigation district's infringement of a city's right to consent results in the "settled" condemnation of land within the city, the city whose right to consent has been denied is left with no remedy at all for the infringement of its sovereign right to consent. The majority, however, does not acknowledge the necessary conclusion flowing from its position—namely, that section 62.106(d) thus becomes a provision that asserts a right without a remedy, which is no right at all. Again, we should not interpret a statute in such a way as to create an absurd result. *See Loutzenhiser*, 140 S.W.3d at 356; *see also Bridgestone/Firestone*, 878 S.W.2d at 135 ("[I]n some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended") (quoted in *Loutzenhiser*, 140 S.W.3d at 356 n. 20); Tex. Gov't Code Ann. § 311.021(3)-(4) ("In enacting a statute, it is presumed that . . . (3) a just and reasonable result is intended . . . [and] (4) a result feasible of execution is intended. . . .").

Reading section 62.106(d) to be jurisdictional, by contrast, *does* promote the purpose of the specific statutory section, which was enacted "for the benefit of the municipality[,]" so that there would "be no conflict in the use to which land in a city could be put, as between a navigation district and a city." *Banta I*, 445 S.W.2d at 62. This policy is at least as important as the policy of protecting settled property interests from collateral attack. Moreover, "[o]ur role here . . . is not to second-guess the policy choices that inform our

statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent"[9]—which, with regard to section 62.106(d), is to benefit the municipality by ensuring that no conflicts arise "in the use to which land in a city could be put, as between a navigation district and a city,"[10] and thus to protect the sovereign powers of cities to determine the use to which land within their boundaries may be put.

## B. Right to Consent as Bargaining Chip for Landowner

The majority also opines that the Legislature's real intention in enacting section 61.106(d)'s consent prerequisite was to benefit landowners, not cities. The majority states:

> A simpler interpretation is that the provision confers standing upon a city to be heard, or that any municipal interest can be represented by the private landowner in a timely fashion, who if successful, will keep his land or command an above fair-market-value premium for its sale.

In light of the considerations set out above, this argument is simply untenable. A city should not be forced to rely on a private landowner to assert such an important right when the landowner might not realize that the city had the right, might opt not to prosecute the right, or might not contest the condemnation proceeding itself. This is yet another indication that the Legislature intended for section 62.106(d)'s consent provision to be jurisdictional, not non-jurisdictional, as the majority contends.

## C. Intervention to Protect Sovereignty

I also disagree with the majority's argument that because the City has intervened

---

9. *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003).

10. *Banta I*, 445 S.W.2d at 62.

in this condemnation proceeding its rights are adequately protected. The majority states, "It is hard to imagine that the Legislature intended to render an entire class of condemnation judgments void for failure to obtain consent when a timely intervention would do...."[11] Along the same lines the majority posits that "reading [section 62.106(d)] to withhold trial court jurisdiction is unnecessary to protect the interests of local government" because, among other things, cities may intervene in condemnation proceedings.

First, this Court should hesitate to speculate on whether a municipality may, in fact, intervene in a condemnation proceeding when the issue is not before us because, as is explained above, we lack subject-matter jurisdiction in this interlocutory appeal to consider the trial court's denial of the motion to strike the City's intervention. *See Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("We must strictly construe [Civil Practice and Remedies Code] section 51.014's grant of interlocutory jurisdiction because the Legislature intended it to be a narrow exception to the general rule that only final judgments are appealable.").

Second, the fact that the affected City happens to be an intervening party in this suit does not provide protection to any other cities, including those that do not discover condemnation proceedings until after judgment. I note that, even here, the Port *contested* the City's intervention in this suit because the City had not been a party to the administrative portion of the condemnation proceeding. That is, the Port argued below that the City had, in effect, no ability to participate in the condemnation proceedings and no way to enforce the right to consent that the Legislature had given it in section 62.106(d).

Moreover, the majority's opinion implies that a city has the burden to discover and to assert its right to consent in a timely fashion, even in the absence of a statutory provision for its protection, in the event its right is infringed. Under the majority's reasoning, if a city does not timely intervene to assert the lack of consent, it loses its right to object. In the case of a city that does not learn of the condemnation proceedings before they are complete, this translates into the *unknowing* waiver of a statutory right—the opposite of the fundamental rule that waiver of a constitutional or statutory right consists of a party's "intelligently, voluntarily, and knowingly relinquishing a known right or acting inconsistent with claiming that right." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 844 (Tex.2000).

Above all, the majority's conclusion that a city's rights are adequately protected by the possibility that it might be allowed to intervene in condemnation proceedings trivializes the consent provision, if it does not render it utterly meaningless, in sharp contrast to the supreme court's interpretation of the importance of such provisions, as set out in *Mann*, 135 Tex. 319, 143 S.W.2d 1028 (Tex.1940). In *Mann*, the City of Galveston proposed to build a park with a pier extending beyond the seawall into the Gulf of Mexico over land belonging in part to the State and to finance the construction with general obligation bonds secured by a deed of trust. *Id.* at 1029–31. The Attorney General, however, refused to approve the bonds, as he was required to do by statute, and a mandamus proceeding was brought to compel him to approve them. *Id.* at 1029. The Supreme Court of Texas held that the Legislature lacked power to transfer to the city land held by the State in trust for all the people; the court further held that the structures would be at least a prima facie encroach-

11. The Port took this same position at oral  argument.

ment upon the prima facie rights of the sovereign over the tidelands and upon the unquestioned property rights of the sovereign over the land beneath the sea and, for that reason, the structures would be subject to removal at the instance of the State. *Id.* at 1032–34. The consent of the Attorney General to the bonds was designed "to protect the particular locality and its habitants against the imposition of unauthorized or illegal obligations" and to give assurance to intending purchasers that they would acquire indefeasible title to bonds purchased. *Id.* at 1035. The court concluded, "[t]he duty thus imposed upon the Attorney General is important and is in no sense perfunctory." *Id.*

As in *Mann*, the duty imposed by section 62.106 upon navigation districts to obtain the consent of cities within whose boundaries they intend to condemn property is "in no sense perfunctory" because it assures the protection of a city against the assertion of another entity's sovereign authority, that could impair the city's own development plan, and because it likewise assures the protection of the city's inhabitants against obligations that might be imposed upon them by the navigation district without the city's consent. *See* Tex. Water Code Ann. § 62.106. Thus, unlike the majority, I do not believe that section 62.106 places a burden on a city to find out about the condemnation plans of a navigation district within its territory and to object before condemnation proceedings are brought or to intervene to protect its rights on pain of losing the right to object altogether. I think, instead, that the consent prerequisite is important and that *Mann* shows us why it is important.

**D. Enlargement of Trial Court's Jurisdiction**

I further disagree with the majority's reasoning that the consent prerequisite

cannot be jurisdictional because it does not "define[ ], enlarge[ ], or restrict[ ] the class of causes [that] the [county court at law] may decide or the relief the court may award." *Sierra Club v. Tex. Nat. Res. Conservation Comm'n (Sierra Club I)*, 26 S.W.3d 684, 688 (Tex.App.—Austin 2000), *aff'd on other grounds, (Sierra Club II)*, 70 S.W.3d 809 (Tex.2002). Applying *Kazi*,[12] some courts of appeals, including our own and the *Sierra Club I* court, have indicated that if a statutory requirement defines, enlarges, or restricts the class of causes that the court may decide or the relief that the court may award, the requirement is jurisdictional; if the requirement does none of these things it is not jurisdictional, but is only a condition on which the plaintiff's right to relief depends. *See Helton v. R.R. Comm'n of Tex.*, 126 S.W.3d 111, 118 (Tex.App.—Houston [1st Dist.] 2003, pet. denied); *Harris County Emergency Servs.*, 122 S.W.3d at 223; *Heart Hosp. IV, L.P. v. King*, 116 S.W.3d 831, 834 (Tex. App.—Austin 2003, no pet.); *Kshatrya v. Tex. Workforce Comm'n*, 97 S.W.3d 825, 830–31 (Tex.App.—Dallas 2003, no pet.); *Hartford Underwriters Ins. Co. v. Hafley*, 96 S.W.3d 469, 473 (Tex.App.—Austin 2002, no pet.); *Tex. Dep't of Transp. v. Beckner*, 74 S.W.3d 98, 103 (Tex.App.—Waco 2002, no pet.); *Sierra Club I*, 26 S.W.3d at 688. Although this authority was decided in the context of exhaustion of administrative remedies, I (like the majority) find it instructive for the present situation.

In my view, the majority necessarily expands the scope of condemnation proceedings by writing the consent prerequisite out of the statute as a jurisdictional requirement, for which the remedy is dismissal, and, instead, deeming the consent

---

**12.** *See Kazi*, 12 S.W.3d at 76–77.

prerequisite a non-jurisdictional requirement that does not abort condemnation proceedings. If section 62.106(d) means what it says, and if its provisions are mandatory, whether jurisdictional or not, a navigation district that intends to condemn property within the boundaries of a city must plead and prove that it has obtained the city's consent. *See* TEX. WATER CODE ANN. § 62.106(d). Yet by holding that section 62.106(d) is non-jurisdictional, in the absence of a statutory avenue for a city to protest a violation of its right to consent, the majority necessarily implies that a navigational district need *not* plead and prove that it obtained the city's consent to the condemnation. Absolutely nothing happens if a navigation district simply ignores this mandatory provision of section 62.106 if, as the majority avers, the trial court has jurisdiction to hear the condemnation proceedings and to enter a "settled" judgment that the city may not then collaterally attack. Thus, under the majority holding, the jurisdiction of the trial court is necessarily expanded to include condemnation proceedings to which a city's consent has *not* been obtained, contradicting the plain language of the statute and further supporting the conclusion that the majority opinion is incorrect and that section 62.106(d) is jurisdictional, not non-jurisdictional. *See id.*

### E. Abrogation of Section 62.106(d) by Later Enactment of Water Code Section 62.107

Finally, I disagree with the majority's statement that "Water Code section 62.107, later-enacted in 1947, confers condemnation power upon the Port with no local consent requirement, and could suggest that the consent requirement does not apply."[13] *See* TEX. WATER CODE ANN. § 62.107. I initially note that this suggestion—that section 62.107 may supplant section 62.106(d)'s consent prerequisite—has nothing to do with whether section 62.106(d)'s consent prerequisite is jurisdictional. Rather, the statement is an argument that section 62.106(d)'s consent prerequisite *no longer controls*, not that it controls but is not jurisdictional. The statement is, therefore, irrelevant to determining whether section 62.106(d)'s consent prerequisite is jurisdictional.

In any event, section 62.107 grants the Port the general power to "acquire by gift, purchase, *or condemnation*" certain lands. *Id.* § 62.107(a) (emphasis added). Section 62.106 qualifies section 62.107 with respect to the use of the land.[14] Therefore, sections 62.107 and 62.106(d) do not conflict, but should be read consistently—which is how the Code Construction Act requires that we interpret two provisions within the same act, if at all possible. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005) ("In enacting a statute, it is presumed that: ... (2) the entire statute is intended to be effective."); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language

---

13. The Port raises a related argument: that section 62.106(d)'s consent prerequisite is mooted by the Port's independent authority to condemn under section 62.107, which does not contain a consent prerequisite like that in section 62.106 and which allegedly grants the Port independent authority to condemn.

14. I assume, for purposes of this discussion, that the term "right-of-way" in chapter 62 refers to the property's use (the City's position), rather than to the title in which the property is taken (the Port's position, i.e., an easement). Under this assumption, section 62.107(a)'s reference to "land" could include land condemned for use as a right-of-way. I consider further below the meaning of "rightof-way" within chapter 62.

consistent with other provisions in the statute."). If sections 62.106 and 62.107 are read consistently, then the consent provision in section 62.106(d) is not inapplicable, but is complemented by section 62.107. I also note that it would be strange indeed for the Legislature to have supplanted one section of an act by the "later-enacted" very next section, dealing with complimentary subject matter and since codified as part of the same Act by the same Legislature in the same session and made effective on the same day, and I do not agree that it did so here.

### F. Conclusion

For all of the reasons stated above, I would hold that Water Code section 62.106(d)'s consent prerequisite is a condition precedent to a trial court's exercise of subject-matter jurisdiction over condemnation proceedings brought under that section. Thus, the Port's failure to obtain the City's consent to its condemnation of American's property was the proper subject of a jurisdictional plea, and that plea should have been granted and the Port's condemnation proceedings against American dismissed, assuming that section 62.106 controls the disposition of the plea.

The Port argues, however, that section 62.106 is inapplicable to the Port's condemnation proceedings against American and thus does not control the jurisdiction of this case. I turn, therefore, to those arguments.

### Applicability of Section 62.106(d) to this Case

The City rests its jurisdictional plea on its claim that the Port violated section 62.106, which provides that "no right-of-way may be condemned" without the prior consent of a city through which the right-of-way runs. *See* TEX. WATER CODE ANN. § 62.106(d).

The Port offers two reasons that section 62.106(d) does not control. First, the Port argues that four totally separate Water Code provisions—sections 61.115, 61.161, 62.105, and 62.107—provide independent authority for the condemnation and do not require a navigation district to obtain a city's approval before condemning a right-of-way within the city's territory. Second, and alternatively, the Port contends that the term "right-of-way" in section 62.106(d) means an easement interest, not one in fee simple. The Port's focus is thus on the *title* in which the property is taken, rather than on the property's intended *use*. The Port argues that it was condemning the property in fee simple and not as a right-of-way. The Port argues that section 62.106 applies only when a navigation district condemns an easement, not when it takes property in fee simple. It points to evidence that the Bayport Terminal Project also entailed some matters that it contends could not be considered right-of-way projects under its definition: dredging to accommodate for wharves and docks and the building of a sight-and-sound berm from the dredging material. The Port argues that because it was condemning more than an easement here, section 62.106(d) does not apply and that it may condemn American's property without the City's consent.

The City argues, in reply, that the term "right-of-way," as used in section 62.106, refers to the property's intended *use*, rather than to the *title* in which the property will be taken and that its definition is not confined to an easement. The City also points to evidence that the Port was planning to use the property for certain purposes that the City contends were rights-of-way under any definition. For example, the City notes that the Port intended to build a railroad corridor and a roadway that would lead to a cruise terminal and

allow for maintenance. According to the City, the result of the property's intended use as a right-of-way to any extent is that section 62.106(d) applied to the condemnation proceeding. Thus, the City concludes that the Port had to obtain its consent before the Port could condemn American's property. The City also argues that the sections of the Water Code cited by the Port as independent grants of the power of eminent domain that do not contain a consent prerequisite are not, in fact, independent sources of condemnation authority that make its consent to the taking unnecessary.

I will address both of the Port's arguments.

## A. Whether Other Water Code Provisions Control and Allow Condemnation Without the City's Consent

### *Construction of Water Code Sections 61.115, 61.161, 62.105 and 62.107*

In response to the City's reliance on section 62.106(d) in its jurisdictional plea, the Port argued below, as it does on appeal, that four other provisions in chapters 61 and 62 of the Water Code independently allowed for the condemnation of American's property without the City's consent[15] and, therefore, that consent was unnecessary.

Water Code chapters 61 and 62 apply to the Port because it operates as an article XVI, section 59 navigation district[16] while also enjoying the powers of an article III, section 52 navigation district.[17] These chapters provide, in relevant part:

### Section 61.115. Acquisition of Property

The [navigation and canal] commission may acquire by gift, grant, purchase, or condemnation any necessary rights-of-way and property for necessary improvements contemplated by the district.

*Id.* § 61.115.

### Section 61.161. Eminent Domain

(a) The district may exercise the power of eminent domain.

*Id.* § 61.161(a).[18]

### Section 62.105. Right–of–Way

Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247, *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 1042, § 1, 1987 Tex. Gen. Laws 3506, 3506'07.

---

15. The Port relies for this position on *Ex parte Edmonds*, in which the court concluded, in rejecting the petitioner's contention that a particular statute (former Texas Revised Civil Statute article 1107) did not authorize condemnation, and that "[w]hether or not the [condemning authority] has authority to condemn under Article 1107 is immaterial, because ample authority is given in Article 1109b, and no attack is made on the power of the city to condemn for drainage purposes under that [latter] statute." 383 S.W.2d 579, 581 (Tex. 1964). I note that, unlike the petitioner in *Ex parte Edmonds*, the City *does* assign error to the Port's position that other statutes allow condemnation without the City's consent.

16. Within Water Code chapter 62, " 'District' means a navigation district operating under the provisions of Article XVI, Section 59, of the Texas Constitution." Tex. Water Code Ann. § 62.001(1). The Port is such a district. *See*

17. Within Water Code chapter 61, "j[d]istrict' means a navigation district created under Article III, Section 52, of the Texas Constitution." Tex. Water Code Ann. § 61.001(1) (Vernon 2004). The Port is such a district. *See* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247.

18. Chapter 61 also provides that certain Water Auxiliary Laws concerning eminent domain apply to the chapter. *See* Tex. Water Code Ann. § 61.120; *see also* Tex. Water Aux. Laws arts. 7849 ("Property rights"), 7850 ("Eminent domain") (Vernon 2005). Article 7850 provides: "The right of eminent domain is hereby conferred upon all districts for the purpose of condemning and acquiring the

The [navigation and canal] commission may by gift, grant, purchase, or condemnation acquire the necessary right-of-way and property of any kind for all necessary improvements contemplated by this chapter.

*Id.* § 62.105.

### Section 62.107.  Acquisition of Land

(a) Any district created under this chapter may acquire by gift, purchase, or condemnation and may own land adjacent or accessible to the navigable water and ports developed by it which may be necessary or required for any and all purposes incident to or necessary for the development and operation of the navigable water or ports within the district, or may be necessary or required for or in aid of the development of industries on the land.

*Id.* § 62.107(a).

The Port argues that section 62.106(d)'s consent prerequisite is mooted by the Port's independent authority to condemn under Water Code sections 61.115, 61.161, 62.105, and 62.107, none of which contain a consent prerequisite like that in section 62.106. *See id.* §§ 61.115, 61.161, 62.105, 62.107. The City responds that (1) section 62.106(d)'s protections would be "meaningless" if the statutes on which the Port relies controlled to the exclusion of section 62.106(d) and (2) the statutes on which the Port relies can be harmonized with section 62.106(d)'s consent prerequisite.

The rules of statutory construction provide that courts (1) must presume that the Legislature intended a just and reasonable result; (2) may consider the statute's object, the circumstances under which it was enacted, common law and former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular statutory construction; (3) must construe all portions of a statute (here, a statutory scheme) to be effective, if possible; and (4) must not confine their review to isolated statutory words, phrases, or clauses, but must instead examine the entire act. *See* Tex. Gov't Code Ann. §§ 311.021(2), (3), 311.011, 311.023(3), (5); *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001). All of these rules apply here. Most important, however, are the "plain language" rule and the rule of *ejusdem generis. See Fitzgerald,* 996 S.W.2d at 865–66 (in ascertaining legislative intent, the most important consideration in statutory interpretation, courts begin with plain language of statute). Under the rule of *ejusdem generis,* when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words is restricted to the particular designation. *See Hubenak III,* 141 S.W.3d at 189–90 & n. 110 (applying principle of *ejusdem generis* to condemnors' offer and tract of land described in condemnation petition); *Hilco Elec. Coop. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex.2003) (applying principle to purpose for which electric cooperatives can be organized); *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 701–02, 706 (Tex.2002) (applying principle to construction of private easements).

Sections 61.115, 61.161, and 62.105 of the Water Code, which the Port contends supersede section 62.106 with its consent provision, are all general provisions conferring on navigation districts the powers to acquire property, to exercise the power of

right of way over and through all lands, private and public, except property used for cemetery purposes, necessary for making and maintaining dams, bulkheads, jetties, locks, gates and all other improvements necessary and proper for such construction." Tex. Water Aux. Laws art. 7850.

eminent domain, to acquire "necessary rights-of-way and property of any kind," and to condemn and to own "land adjacent or accessible to the navigable water and ports developed by it." *See* Tex. Water Code Ann. §§ 61.115, 61.161, 62.105, 62.107.

For example, sections 61.161 confers on navigation districts the power of eminent domain, and section 61.115 empowers navigation districts to condemn any "necessary rights-of-way and property for necessary improvements." *Id.* §§ 61.161, 61.115. Section 62.105, entitled "Right–of–Way," grants navigation districts the general power to "acquire the necessary right-of-way and property of any kind" by "gift, grant, purchase, or condemnation." *Id.* § 62.105. By contrast, section 62.106, entitled "Condemnation Proceedings," specifies the purposes for which the district is granted the power to condemn, the procedure for condemning, and the limitations on condemnation of rights-of-way. *Id.* § 62.106. That is, section 62.106 limits the navigation district's exercise of the foregoing powers in condemnation proceedings to those purposes that are necessary for the improvement of rivers, bays, creeks, and streams, the construction and maintenance and canals and waterways, and other purposes authorized by chapter 62; and it further limits the exercise of that power by requiring the prior consent of the lawful authorities of any incorporated city or town in which the district seeks to condemn a right-of-way. *See id.* § 62.106.[19] Thus, section 62.106 specifies certain particular purposes, applicable in this case, to which the general powers conferred by sections 61.115, 61.161, and 62.105 may be put.

Section 62.107 is complementary to section 62.106. Section 62.106 confers on navigation districts the power to "condemn and acquire the right-of-way" as necessary to improve navigable waters and to construct and to maintain canals and waterways, subject to the condition that no right-of-way may be condemned without the consent of the lawful authorities of any city through which a right-of-way is condemned. *See id.* § 62.106. Section 62.107 then grants navigation districts the power to "acquire by gift, purchase, or condemnation" land that may be "necessary for the development and operation of the navigable waters or ports within the district" or necessary for the development of or in aid of "industries on the land." *See id.* § 62.107. Section 62.106 thus states certain uses for which a navigation district may acquire property; and section 62.107 states the means by which such property may be acquired.

I disagree with the Port's position that the grants of eminent-domain powers in sections 61.115, 61.161, 62.105, and 62.107 of the Water Code represent independent, limitation-free bases for navigation districts to condemn rights-of-way through cities. Rather, these are all provisions of the Water Code that are applicable to navigation districts like the Port and that do not conflict with section 62.106. Therefore, under the plain language rule and the rule that all portions of a statutory scheme must be given effect, they must be harmonized with section 62.106. Moreover, under the rule of *ejusdem generis*, the consent requirement in section 62.106 controls over the more general grants of power in the other provisions, not the other way around, as the Port would have it.

**19.** I realize that sections 61.115 and 61.161 appear in a different chapter of the Water Code from that in which section 62.106 appears. However, as shown below, chapters 61 and 62 both apply to navigation districts like the Port and are to be construed as complementing each other so long as their terms do not conflict.

Reading the two chapters' eminent-domain provisions as the Port does contravenes the rules of construction. Reading them as the City does not only comports with well-settled rules of statutory construction, but also promotes the purpose of section 62.106(d)'s consent prerequisite, which is to "benefit ... the municipality" by ensuring that "there [is] no conflict in the use to which land in a city could be put, as between a navigation district and a city." *See Banta I*, 445 S.W.2d at 62.

### Grant of Eminent–Domain Power to the Port Under the Texas Constitution

I also disagree with the Port's implicit argument that the Legislature's general grant of eminent-domain power to navigation districts in sections 61.115 and 61.161 "trumps" chapter 62's limitation on that power in the consent prerequisite in section 62.106(d). The special legislation converting the Port to an article XVI, section 59 navigation district provided:

Sec. 2. Conversion of District and Tax Supported Obligations.

(a) Effective and operative January 1, 1958, [*the Port, referred to as "the District" herein*] *is hereby converted to a navigation district operating under the provisions of Section 59 of Article XVI*, Constitution of Texas, *and* after said date, said District will operate *under Section 59 of Article XVI and this Section 2 of this Act*; . . . .

*Said District will thereafter be empowered and authorized to exercise*, in addition to *all powers conferred by this Act, all powers conferred upon said District by* the law or laws under which it was organized [*Tex. Const. art. III, § 52*], *and, in addition, shall have all of the powers and jurisdiction conferred upon Districts originally organized under Article XVI, Section 59*, of the Constitution of the State of Texas, and par-

ticularly [listing several statutes then in effect, including the predecessor to current Water Code section 61.115, applicable to article III, section 52 districts]; *provided, that if there is any conflict or inconsistency between said laws or any of them, and this Act, then to the extent of conflict or inconsistency, the provisions of this Act shall govern.*

*See* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241, 247 (emphasis added), *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 63, § 1, 1987 Tex. Gen. Laws 3506, 3506–07. The "powers and jurisdiction" set out in Chapter 62 of the Water Code are those conferred upon navigation districts by article XVI, Section 59. The powers and jurisdiction set out in Chapter 61 are conferred by article III, Section 52.

From the plain language of the above-quoted Act, it is clear that the Legislature intended that the Port function, first and foremost, as an article XVI, section 59 district and that the "jurisdiction and powers" of an article III, section 52 district merely supplement, rather than supplant, the Port's article XVI, section 59 powers, except that, in cases of conflict, "this Act shall control." Because "this Act" is the special legislation that converted the Port to an article XVI, section 59 district, I construe the "except that" proviso, by its plain language, to state that, in cases of conflict, the provisions of article XVI, section 59 control over the provisions of article III, section 52; hence when there is a conflict between them, the provisions of Chapter 62, enacted pursuant to article XVI, section 59, control over those in Chapter 61, enacted pursuant to article III, section 52. Thus, if there were a conflict between section 62.106 and either section 61.115 or section 61.161, section 62.106 would control. However, as there is no conflict between the provisions in

chapters 62 and 61 invoked by the Port, all provisions cited by the Port apply to the condemnation proceedings at issue here, with the more specific controlling over the more general.

Accordingly, I would hold on this additional basis that Water Code section 62.106(d)'s consent prerequisite is not mooted by the general eminent-domain powers granted by chapter 61 of the Water Code, but that satisfaction of section 62.106(d)'s consent requirement is a jurisdictional prerequisite to the Port's maintenance of condemnation proceedings against American.

**B. Whether the Port's Taking Constitutes Condemnation of a "Right-of-Way" Requiring the City's Consent Under Section 62.106**

Finally, the Port argues that because section 62.106, by its express language, applies only to the taking of "right[s]-of-way," and because the Port intends to take a fee-simple interest in the condemned property, not a right-of-way, section 62.106 does not apply, and the City's consent was not necessary to the Port's condemnation of American's property.

The City acknowledges that the term "right-of-way" has been held to mean different things in different contexts.[20] However, it argues that, in this context, a navigation district's right to condemn right-of-way refers merely to the purpose for which it may take land, not to the interest that it may take in the land. A close reading of section 62.106 as a whole, in light of the entirety of the Water Code and settled law, compels the conclusion that the City's interpretation of section 62.106 is correct.

First, the other sections of the Water Code just discussed are designed to empower navigation districts to take whatever land is necessary, and in whatever way is necessary, to achieve the purpose of section 62.106. As the Port itself acknowledges, sections 61.115, 61.161, and 62.107 of the Water Code all empower a navigation district to take land in fee simple. *See* TEX. WATER CODE ANN. §§ 61.115, 61.161, 62.107. Section 62.106, by contrast does not refer to the manner in which land may be taken; rather it refers to the purposes for which public and private land may be condemned by a navigation district.[21] *Id.* § 62.106. When these provi-

**20.** *See, e.g., Tex. Elec. Ry. Co. v. Neale,* 151 Tex. 526, 252 S.W.2d 451, 454 (1952) ("The term 'right-of-way' has a two-fold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed.") (*quoting Joy v. City of St. Louis,* 138 U.S. 1, 11, 11 S.Ct. 243, 34 L.Ed. 843 (1891)); *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 871 (Tex. App.-Austin 1988, writ denied) ("Right-of-way, when used alone, can have more than one meaning: it may denote either a right of passage or the right-of-way strip of land itself."); *Hidalgo County v. Pate,* 443 S.W.2d 80, 84 (Tex. Civ. App.-Corpus Christi 1969, writ ref'd n.r.e.)(term "right-of-way" in deed is sometimes "used to describe an incorporeal right of passage over

the land of another in which case it is an easement. The term is also used to describe a strip of land upon which the owner appropriates the land, the use of which is connected with some type of transportation. It is sometimes used to describe a strip of land or the purpose for which it is to be used. In this situation it can be a deed in fee for right-of-way purpose").

**21.** Likewise, section 61.115 provides, "The commission may acquire by gift, grant, purchase, or condemnation any necessary rights-of-way and property for necessary improvements contemplated by the district." TEX. WATER CODE ANN. § 61.115. The predecessor to this section has been interpreted as permitting the conveyance of land to a navigation district in fee simple. *Tex. Parks & Wildlife Dept. v. Champlin Petroleum Co.,* 616 S.W.2d

sions are harmonized with section 62.106, as the rules of statutory construction require, it is clear that "right-of-way" refers to the purpose for which a navigation district may condemn public or private land.

It is also clear from the other provisions of the Code and prior law that land may be taken in any way necessary to achieve the purposes set out in section 62.106 and that section 62.106's consent provision applies to such a taking, regardless of the means by which the land is taken. Moreover, other Water Code provisions would not make sense if right-of-way were defined solely as the title in which property is taken, rather than as the use to which the property will be put.[22]

The Port, however, noting that section 62.106(a) does not define the term right-of-way, supports its argument that right-of-way refers only to an easement by referring us to subsection 62.106(b) of section 62.106. This subsection provides that "[t]he assessment of *damages* [in condemnation proceedings] shall be in conformity with the laws of the State of Texas for condemnation and acquisition of rights-of-way by railroads." Tex. Water Code Ann. § 62.106(b) (emphasis added). The Port contends that because the laws for condemnation of rights-of-way by railroads provide elsewhere that "[t]he right of way secured by condemnation to any railway company in this State shall not be construed to include the fee simple estate in lands . . . ,"[23] section 62.106(b) should be construed as prohibiting navigation districts from taking land in fee simple.

The Port's argument misconstrues section 62.106(b). Section 62.106(b) does not refer to the title in which a navigation district may acquire property through the exercise of its power of eminent domain. Rather, by its plain language, the section sets out a statutory standard for the assessment of *damages* in condemnation proceedings. *See* Tex. Water Code Ann. § 62.106(b). Under the Texas Constitution, the power of the State to take proper-

---

668, 672 (Tex. Civ. App.-Corpus Christi 1981, writ ref'd n.r.e.).

**22.** *See, e.g.,* Tex. Water Code Ann. § 26.346(e)(2) (Vernon Supp. 2005) (under the Port's interpretation, a state or local government agency that discovers certain unregistered underground or aboveground storage tanks during construction in a right-of-way would be entitled to reimbursement only if the agency had purchased a right-of-way in easement, as opposed to a right-of-way in fee); *id.* § 49.155(a)(7) (Vernon Supp. 2005) (under the Port's interpretation, district could use bond proceeds to pay for rights-of-way in easement, but not rights-of-way in fee); *id.* § 49.220 (Vernon 2000) (under the Port's interpretation, districts and water supply corporations would have right-of-way access to existing public rights-of-way only if the existing rights-of-way were held in easement, rather than in fee); *id.* § 51.641 (Vernon 2002) (under the Port's interpretation, commissioners would be viewing only non-possessory interests, rather than right-of-way land itself, when they viewed rights-of-way); *id.* § 53.112(1),

(2), (4), (5) (Vernon 2002) (under the Port's interpretation, districts could construct improvements across only certain rights-of-way held as easements, rather than those held in fee); *id.* § 56.120 (Vernon 2002) (under the Port's interpretation, districts could construct bridges or culverts across or under only those railroad rights-of-way held in easement, rather than those held in fee); *id.* § 57.100 (Vernon 2004) (under the Port's interpretation, districts could construct improvements across or under only certain rights-of-way held as easements, rather than those held in fee); *id.* § 57.101(a) (Vernon 2004) (under the Port's interpretation, district would have to notify railroad authorities only if it wanted to construct improvement across or under railroad right-of-way held in easement, but not if it wanted to do so across or under one held in fee); *id.* § 57.155(a) (Vernon 2004) (under the Port's interpretation, engineer would have to describe only rights-of-way held as easement, not those held in fee).

**23.** Tex. Rev. Civ. Stat. Ann. art. 6339 (Vernon 1926).

ty for a public use is subject to the right of the owner to just compensation. TEX. CONST. art. I, § 17; *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (Tex.1941). In this regard, the supreme court long ago established that when a taking by a railroad leaves the landowner with some beneficial use of the land, the damages will be less than the value of the fee; but, when the landowner is deprived of all beneficial use of the land, he may recover the market value of the fee, regardless of the nature of the conveyance. *See Thompson v. Janes,* 151 Tex. 495, 251 S.W.2d 953, 955–56 (Tex. 1952). Indeed, the court considered that " 'this principle is so well established that it is generally assumed without discussion.' " *Id.* at 956 (quoting NICHOLS ON EMINENT DOMAIN, Vol. 4, § 12.41(2) (3d ed.2005)); *see also Hale,* 146 S.W.2d at 736 (indicating that, with respect to payment of just compensation, State itself "is in the same position and governed by the same rules, as railroads, counties and other subdivisions of the State, and corporations, to which it has delegated power of eminent domain"). Both the holding and the reasoning in *Thompson* apply to the assessment of damages in a condemnation proceeding under section 62.106 of the Water Code. But neither *Thompson* nor section 62.106(b) concerns the title in which the property is condemned.

I likewise reject the Port's argument that reading section 62.106's right-of-way language as anything more than an easement is contrary to the Property Code's general rule that "[e]xcept where otherwise expressly provided by law, the interest acquired by a condemnor under this chapter does not include the fee simple title to real property, either public or private." TEX. PROP.CODE ANN. § 21.045 (Vernon 2000). The *Meaney* court, on which the Port relies, disposed of this very argument that was based on the statute's predecessor:

We are not unmindful of the provisions of [Property Code section 21.045's predecessor]. . . . This article provides that 'except where otherwise expressly provided by law, the right secured (under the power of eminent domain) shall not be so construed as to include the fee simple estate in lands.'

As stated in Texas Jurisprudence, 'this enactment is but an enunciation of the general rule, obtaining even in the absence of statute, that the condemnation of property for a public use divests its owner of no right further than is necessary for the purpose for which the condemnation was authorized.'

*Meaney v. Nueces County Nav. Dist. No. 1,* 222 S.W.2d 402, 407 (Tex.Civ.App.-San Antonio 1949) (citations omitted).

Furthermore, contrary to the Port's argument, the nature of the interest in property that may be taken by a navigation district is not constrained by Revised Civil Statute article 6339, which governs takings by railroads. Rather, the type of interest conveyed in a condemnation proceeding under chapter 62 of the Water Code depends upon the instrument under which it is conveyed, and a dispute over the nature of the title that has passed is determined by reference to the words of the deed and the attending circumstances. *See Neale,* 252 S.W.2d at 454–56. The use of the term right-of-way to indicate the purpose for which land is conveyed:

does not change the effect of the conveyance for the declaration in a deed of the purpose for which land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement.

*Id.* at 456.

In accordance with the foregoing principles of law, the predecessor to section

62.106 was held to empower a district formed under article XVI, section 59 of the Texas Constitution, like the Port, to acquire absolute title when that type or kind of estate or interest was necessary. *Meaney*, 222 S.W.2d at 407–08; *Nat'l Ass'n of Audubon Socs. v. Arroyo Colo. Navigation Dist.*, 110 S.W.2d 150, 152 (Tex.Civ.App.—San Antonio 1937, no writ) (holding that right-of-way may be held in fee or in easement). The *Audubon Societies* court stated, "Under [the predecessor to section 62.106], the discretion was lodged with the district to determine for itself whether it was necessary to obtain *a fee-simple title to the right of way* sought to be condemned *or an easement over* and through the leasehold estate held by the appellant." 110 S.W.2d at 152 (emphasis added). The *Meaney* court, construing the predecessor to section 62.106, explained:

> It is not necessary that the term, 'fee simple,' or other particular and precise words be used to authorize the taking of a fee simple title. 'There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient.'
>
> We hold that the appellee district is authorized under law to acquire fee simple title to lands for all necessary improvements contemplated by the Act.

*Meaney*, 222 S.W.2d at 407–08 (citations omitted); *see also Housing Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 88 (Tex.1940) (indicating that courts have construed grant of eminent domain power to mean that condemnor may condemn such property as it deems necessary for its purposes); *Costello*, 143 S.W.2d at 578 ("The history of the many laws enacted by the legislature of this State relating to the exercise of the

right of eminent domain clearly shows that it is the policy of the legislature to liberalize the exercise of that power, rather than to restrict it."); *Brazos River Conservation & Reclamation Dist. v. Allen*, 141 Tex. 208, 171 S.W.2d 842, 846 (Tex.1943) ("A governmental agency or public service corporation that has the power of eminent domain and that already own an interest in property sought to be condemned may, notwithstanding the ownership of such interest, acquire by condemnation the fee title in the same land when necessity exists for the taking of the fee title.").

I would hold that section 62.106 governs the instant condemnation proceedings and that the Port's power to condemn rights or interests in land under that section is limited only by the necessity of taking the land at issue for the purposes set out in the section, with the consent of the lawful authorities of any incorporated city or town within which condemnation is sought. This construction accords with the purpose of section 62.106(d)'s consent prerequisite, namely, to protect cities by allowing them veto power over right-of-way condemnation within their territory, regardless of the nature of the conveyance by which that right-of-way is obtained. Indeed, it would make little sense to read section 62.106 to protect cities only when a right of passage was condemned by easement within their boundary, but not when the same right of passage was condemned by fee. The *Banta I* court indicated as much when it described section 62.106(d)'s predecessor's purpose as protecting cities "so there [is] no conflict in the use to which land in a city could be put, as between a navigation district and a city." *Banta I*, 445 S.W.2d at 62 (emphasis added).

For the foregoing reasons, I would hold that right-of-way, as used in Water Code section 62.106, refers to the use of the property to be condemned, rather than the

title in which the property is to be taken, and thus the fact that the land was taken in fee simple, as permitted by section 62.105, is irrelevant to the Port's obligation to obtain the City's consent to the taking before condemning the land under section 62.106. Accordingly, I would hold that the Port had to obtain the City's consent to condemn American's property. *See* TEX. WATER CODE ANN. § 62.106(d). The Port's having failed to do so, the trial court lacked subject-matter jurisdiction over the condemnation proceeding and that proceeding should have been dismissed.

### Conclusion

I would reverse the trial court's order denying the City's jurisdictional plea and would render judgment that the City's jurisdictional plea be granted and that the condemnation proceeding be dismissed.